I'm interested in issue two of the case, which is the ineffective assistance of counsel argument. I would like to briefly discuss some of the evidence in the case because that's the context that we're going to have to address that argument in. Your Honors, just as background, as you know, there's no statement by the defendant in this case. There's no weapon. There's no physical evidence at all, and there's no showing as to why this crime occurred. In this context, the State only presented a weak case. We believe that this Court should reverse on the merits of that. Certainly, it affects how we evaluate prejudice in that ineffective assistance argument. Let's go witness by witness. First, we have Maria Vasquez. What does Maria Vasquez relate? That she saw the shooter in the middle of a group of three men and that the shooter walked up on that sidewalk. That's completely contradicted by the State's other witness, Sophie Guzman, who describes a completely different crime. She describes that the shooter stood alone and was dropped off in a black SUV. This simply isn't the kind of contradiction that a jury can reasonably resolve. Further, Your Honor, and this is a key fact of the case, is two of the State's witnesses originally named somebody else the offender in their first conversation with the police. That's clear in the police reports. Can you explain? I really can't figure this out by reading the briefs. So they were asked the foundational question, what they said to the police. The police officer was called to testify. What did they say? And the police officer said, I don't remember what they said. Yes, he hemmed and hawed. He hemmed and hawed on the stand. His signed police report, which is his prior statement, was admitted. What do you mean? The document itself? The document itself was admitted into evidence. How did that happen? Well, the State did not object, so it's not clear precisely what the Court's reasoning was. However, there's a number of... Just so you understand, because I have not really read this part of the record. So the police officer is on the stand. He says, I don't remember what my report said. Yes. And the defense said, Your Honor, I'm going to show it to him. And he says, I still don't remember. Maybe. Did they try to refresh his recollection with it? It's clear that he was shown the report and that he was given an opportunity to comment on it. And then after he's off the stand, the defense has removed to introduce this document? Yes, at the close of case, at the close of the jury construction comments, I believe, it was introduced into evidence on defense motion. It was originally State's Exhibit 32 as Defense 3 came in. And it didn't... There's no objection by the State? There's no objection by the State. And did it go back to the jury? I believe it went back to the jury. It's an ambiguous note on the record. It's not 100% clear whether it went back to the jury. On these facts, it's fairly clear that it would be admissible as a 115-10-1 because it's his prior statement. He couldn't remember that statement. It's his signed report. But it's a hearsay statement. Yes, it's a hearsay statement. It's hearsay and hearsay. Yes. So it's the prove up of Maria and Gabrielle's prior inconsistent statement. But they didn't admit to making the statement to the police officer? No. They did not admit. So the defense counsel had to prove it up with extrinsic evidence. And the police report, once the officer hemmed and hawed on the stand, became admissible extrinsic evidence to prove it up. Under what section of 115-10? It would be a 115-10-1 under his acknowledged signed report. Because it's an inconsistent statement. That is his own hearsay, but someone else's hearsay. Yeah, it came in as the prove up of the prior inconsistent statement. That they denied me. That they had. Well, they variously denied and said, I can't recall. Or they sort of shifted around, which is not much of a surprise that you'd see Maria Vasquez do it, given that she has a prior perjury conviction. So she was generally avoiding saying anything definite on the stand. And most important here is it's admitted without any objection by the state. If the state had decided that it should not be admitted, it should have objected there. It probably wanted it for some other reason, that report, because the state usually likes police reports to go back. Further, your honors. There's also George Flores' testimony we have in this case. He's the one witness who doesn't have these problems of contradiction, of delaying before going to the police. What George Flores says is he's there, he's walking down the streets, he doesn't see any shooter at all. He simply sees a different group of men, a group of three Hispanic men, not including my client at the scene. And given the contradictions and the shifting testimony of these witnesses, it's clear that at the very least this is a closely balanced case. And we believe that given these contradictions, that it's reversible error, that the jury simply couldn't reasonably resolve them. More importantly, and I understand this is the court's interest, this case is barely deserving of confidence to begin with. Where defense counsel's broken promise left the jury to believe that even the defendant's parents had abandoned his defense, the court can't have confidence in the verdict. There's never been a hearing as to why the defense attorney didn't call those witnesses, is there? There has not been a hearing, your honor. It was never raised in the post-trial motion? No, I would not expect counsel to raise his own ineffectiveness in a post-trial motion. So shouldn't this be raised more probably in a PC? No, your honor, there's several circumstances where this can be reversed on direct appeal. This court's recently reversed on direct appeal in Gaines. Let me ask you a question. What would defense counsel do if he was armed with the statements that he had, the information he had, and before the defense case in chief, he receives a call from the parents that says we refuse to testify, we're not going to lie to them? Well, if he had received that call before the defense case in chief, he probably should not have promised the witness that the witnesses would testify. He had a statement from the investigator that these people were going to establish an alibi. And he had that before the trial began, didn't he? Yes. So that's a pretty good alibi. But we don't know what happened after opening statement and before he rested without calling a witness. Shouldn't we know that before we make a determination as to whether it was a good strategy or it wasn't? There are things we do know that show reversible error, even without speculating as to some off-the-record conversation. He made the promise. He then broke the promise. He then never developed any sort of alternative strategy. He didn't mitigate the fact that broke the promise to the jury. And he left the jury to believe that the defendant had sought to create a false alibi with his own parents. Well, I mean, if a defense attorney was communicating to a defense attorney that parents refused to testify because they repudiated their prior statement, what should he tell the jury? I was going to call the parents, but they say they won't lie for their son? Well, you should tell the jury, you might have expected me to call the parents, but the State's case is so weak, I don't feel it's necessary. At least do something to mitigate that expectation. Because the expectation here creates the impression that the defendant's parents abandoned his own defense. It supplemented the State's case with the belief that the defendant had sought to construct a false alibi. Further, Your Honor, the record. Can you tell me the time frame? This is a real short trial, right? The trial itself, it rests on the second day. Closing arguments were the third morning. So the whole trial took one day? The whole trial was a day and a half. There was two days of witness testimony. So, okay. So tell me, so you can kind of visualize this. From the time of the opening statement. From the time of the opening statement until defense rested his case was about 30 hours. He rested early the afternoon of the second day. Given that most of that time was in the courtroom. Something could have happened at night, the night between his statement and resting. Well, to answer your effectiveness claim, it would have to be something that counsel would not reasonably have discovered through investigation that eight months between the time he noticed the alibi defense and trial, then he would have had to lose two witnesses reasonably in the hours between the first and the second day of trial. And we certainly can't presume such facts that are unlikely to be true. While we might presume something is sound strategy, we know from the case law that this is not a strategy. Well, presuming it would be true would be to deny him any relief based on the argument. But my question was, shouldn't there be a hearing? A factual hearing for him to explain why he didn't call a witness. If the court is interested in the way to do a hearing, the proper way to do that is to remand. If we, what's happening right now is to remand for his hearing. We do it all the time in the crankle context. Well, there's only one problem. In the crankle hearing, it wasn't put in the post-trial motion. So now the question becomes, doesn't it belong in a PC with ineffective assistance of counsel alleged in the PC, along with failure to, you know, raise in the post-trial motion? And that's what you're for. Well, to place him to state what some of my people either gone did and simply push it off the record into the context of collateral relief would be to effectively deny any relief altogether. Because here we'd have a teenage defendant left to make an argument pro se without counsel. That would be to say that there's simply kinds of constitutional claims that a defendant does not have a right to adjudicate. And this, and if we remand, then at least the defendant has a right to counsel. And if we do it from remand directly from this court, then at least we can do it while the witness's memories are fresh. And we can do it where there's actually some opportunity of giving meaningful relief instead of getting bogged down in the post-conviction process where the odds are it will probably take four or five years before we even get to a second stage hearing. Well, don't the cases all seem to say no matter what, there is a strong presumption that this was a strategy by the defense attorney and move on? No, Your Honor. Only, we only indulge the presumption for informed strategic choices. What the case law say, says on this is things like it defies reason to believe that this was strategy. That's the Fifth District and Brioni's. That characterized this kind of decisional sequence as an egregious blunder. There's Hampton, which says in no sense does it serve the defendant's interest to make them then break promises for reasons that were apparent at the time the promises were made. It can't be described as legitimate trial strategy. There's cases like Uber v. Guarino, which describes it as indefensible and not part and parcel of a reasoned strategy. Of these cases? Yes. Are these cases in which the attorney promised to call a witness other than the defendant? Yes. In, I believe actually in Hampton, among the witnesses were two witnesses that would testify that the defendant was not a gang member and that was a complex multi-defendant case and they were going to corroborate the defendant's story. Another case that's recent on this, there's English v. Romanowski, which is cited in the motion that cites supplemental authority. There, the promised witness was the defendant's girlfriend who was going to corroborate the defendant's self-defense claim. Here, what the promise was, it was the defendant's parents and it was the entire defense case. These were the only witnesses promised and counsel didn't call them at all. The answer is, the cases that you just relied on here, were they PCs or were they direct appeal? This has been an action on both PC and direct appeal. In Brioni's and Bryant, the Fifth Division reversed this on direct appeal. The other ones cited are from Federal habeas, but in those cases, a lot of the time it was simply based on the facts as found by the lower appellate court. Your Honor, and while we might presume strategy, we don't presume off-the-record facts. We have an unusual situation in this case because the record itself shows a decisional sequence, a promise, breaking the promise and failing to mitigate it, which lays out a clear showing of ineffective assistance of counsel. If that were the case, every time that there's a promise that there's going to be a witness and the witness isn't called, you've got reversible error in the case without even hearing. I mean, if your theory is correct, you'd have reversible error in every case. And that simply isn't. I mean, there's an issue. We want to know why he didn't call if he has a reason. If he has no good reason, then you're right. Then it's reversible error. If he has a valid reason that's strategy, then you're wrong. It's not reversible error. So now the question becomes, what do we do with this case? Well, that's why I'm suggesting that this Court has the authority under the Illinois Supreme Court rules to remand if it believes that our claim depends on an off-the-record fact. And by remanding to the trial court for a hearing, that would resolve the issue. And how do we have that authority? It's clearest in People v. Garrett, Your Honor, which construes, I believe, it's 615B, but I'm not sure. It's cited in the reply brief that it says that an appellate court has the authority to retain jurisdiction and remand. We do it all the time in other contexts. We do it, of course, in the crankle context. There's nothing unusual about doing it. But there's no reason why this Court's authority would be different from the crankle context to this particular unusual context, especially given this odd fact that we have the witness's affidavits in the record saying that the defendant was with them at the time of the shooting. And further, Your Honor, I want to clarify that there's two separate claims here. There's a claim that he should have called the witnesses after he promised them because their testimony was strong. But there's also this claim of he should not have made the promise in the first place, not knowing if they were going to testify. And the fact behind that promise is clearly on the record. And that's what the case law, when it looks at the question, makes a distinction between those two sorts of claims. Can I ask another question? I'm not sure I understand. How do we get these affidavits in the record from the parents? It's not exactly clear to me either. They ended up among the exhibits on the record on appeal. Do we know? We have no idea. I have no idea how they ended up among the exhibits that the court took in. As you'll notice, there's a number of materials that generally are not in the record on appeal that were in the record on this case, such as non-testifying witnesses' statements to the police. They were not filed in the trial court? Is that what you're saying? It's not. They just kind of magically appear here on our record? My belief is that they were before the trial court, but they did not come in during the trial process. What was that? In what context were they before the trial court? It's not at all clear from the record, Your Honor. I mean, can we point to someplace in the record where the exhibit was presented to the trial court? They were not presented as an exhibit during trial. How did they get certified as part of our record? Yeah. How is that possible? Is there some magic in Ms. Brown's office? You bring her some papers and she puts them in the file, or what happens? I don't know how they got on the record, but once they're in the record, I'm obligated to raise the claim based on these affidavits. What else is there? There's witnesses' statements to the police, non-testifying witnesses, such as Michael O'Malley's. How many other affidavits are there? Well, because these are the ones from the defense investigation, and then there's the various materials gathered by the police investigation. Are these not statements made by the mom and dad to the defense investigator? Yes, they're signed affidavits provided to the defense investigator. And then the state's investigator goes out to talk to them, and they say, we're not talking to you. That's correct, Your Honor. Right? Well, I'm just wondering, I don't understand how those could have gotten why they, on what occasion they were received into the record. I'm obviously missing something, and maybe you are too, because you don't know either, right? No, Your Honor. All I know is that they are among the exhibits in the record on appeal. Okay. We want to hear from the state. Thank you. Thank you. Good morning. May it please the Court. Assistant State's Attorney, Douglas Harbath, on behalf of the people of the State of Illinois. How did they get in the record, Douglas? Your Honor, they were impounded. They are before the record. They are not the trial record. They are not part of the trial record. Your Honor is correct. They were not presented to the judge or the trier of fact in any way, shape, or form. They're discovery, essentially. That was tethered in this case. They happen to be part of the defendant's answer to discovery. Were the state's answer to discovery? Well, the answer to discovery, of course, were in there, but these were documents that were tethered in discovery, including handwritten statements that were never introduced at trial, grand jury transcripts, of course, that were never introduced at trial. They were turned over in the discovery process. And the impound order, I believe, is included in the common law record, and it's rather large. So it's clear that these records, these documents were impounded, and maybe inappropriately so for purposes of direct appeal. The mere fact that they are in the common law record does not make them part of the trial record, and I think this Court is identifying that. I don't know what you mean by impounded. They were impounded. They were put on a court order? Yes, an order. The trial judge somehow certified these in some way? Yes. After trial, and I believe after sentencing, during the post-trial hearing process, these were compiled, and they were listed on an order, and they were signed by the judge, and they were later impounded with the clerk of the circuit court. But that did not make them part of the trial. Were they filed in the court record as discovery? Well, they were impounded with the circuit court clerk after the trial proceedings were concluded. On the order of the trial judge? Yes, Judge. Second question, or another question, if I may. What possible strategy does a defense attorney have to get up an opening statement and say, I'm calling these witnesses, they're going to give my guy a complete and total alibi, and then him not to call them? What's his strategy? Well, I think that identifies the very point. We don't know what the strategy is, and the law is very clear. For the last 26 years since Strickland, it's been clear. We must, based on a silent record, in the absence of anything to indicate otherwise, reviewing courts must presume that it was based on a reasonable trial strategy, even though we have no idea what that strategy may have been. And I think earlier, I believe it was Justice Hoffman, what if the defense counsel received a phone call from the parents saying, I'm not going to lie for my son? What if the defendant himself told his attorney, well, look, I don't want my mom and dad lying for me. Don't call them. I know they have this sheet of paper that gave a very vague and general alibi. He was with me at a barbecue, but I don't want them to lie for me. There's myriad possibilities of what caused counsel to change his mind after he did the opening statement. Yeah, one of them is that he was ineffective. Wouldn't it be? Well, theoretically, that's possible. I don't think this court or any reviewing court can presume that, though. It's the opposite. So you're saying there are no cases on direct appeal where courts have found ineffective assistance of counsel? The cases that the defendant has cited where that has been found, there has been a record established to show that fact. There's been a post-trial hearing. I believe that was the case in Bryant where the issue was litigated, so there was testimony. And I believe, if I'm not mistaken, that the attorney actually testified at that hearing. In the English case, which is a Sixth Circuit case that counsel has cited as additional authority, there was a very long, drawn-out hearing. Your opponent says that we have the authority to send it back, to retain jurisdiction, send it back, and have an evidentiary hearing on it. Absolutely inappropriate in this case. Why? This is only in the context of a post-conviction hearing. Patterson instructs that this can only be accomplished through the vehicle of a post-conviction. To remand, of course, this Court can remand several matters to retain jurisdiction. Where that's ordinarily done is, for example, when an attenuation hearing, a case is remanded for an attenuation to be had. This Court retains jurisdiction to then review the case again to find out if the determination of attenuation was proper. But this is not that case, especially when there was no crankle hearing, there was no alleged ineffectiveness at trial, and I understand counsel's not going to concede his own ineffectiveness, but I think on that point it bears noting that the defendant declined to say anything in allocution, his mother testified at the sentencing hearing, no one piped up. None of these individuals said anything about, you know what, I really would have liked to testify, because I had an alibi exculpating my son. He has to be given some forum in which to make the allegation that there is no strategy to possibly support what was done. Your argument is PC is the only forum? Absolutely. This is, the cases that counsel has, the defendant has actually cited, in fact Patterson being chief among them, actually said in no uncertain terms that when an allegation such as this is made, the appropriate vehicle to address it on its merits is only through a post-conviction. And Patterson actually involved a hearing where I believe the attorney actually testified, but the explanation that he gave for not presenting certain evidence was completely unreasonable. It was absurd. But even with that testimony, the Supreme Court sent it back for a hearing to determine whether or not that would have changed the results, or actually what they say, and I don't have the direct quote, was that maybe there was a different, an undisclosed yet equally reasonable reason for not presenting that evidence. And that's exactly the situation here. So the State's position would be on this particular issue that the defendant has raised, that this Court should take the position that we will not address it on the merits, will not dispose of it on the merits, but rather it should be properly brought into PC. That is the State's position. And I think that goes hand in hand not only with Patterson and the other post-conviction issues, which quintessential post-conviction issue is ineffective assistance of counsel, a typical constitutional claim. Because the defendant wants to be very, very clear that if he does bring it down on a PC, that when he comes back up here again, if he loses it, the State doesn't start arguing the law of the case. Well, I guess... There's going to be no disposition on the merits. Is that correct on this issue? Because of the lack of hearing and the lack of an opportunity for hearing? Well, the defendant also raised... I mean, I guess the problem is that he also raises the claim that aside from the promise itself, the unfulfilled promise itself, there's also the claim that the failure to call these witnesses itself was ineffective assistance of counsel because he had... And I don't believe there has to be... No, no, no. Failure to call is one claim. Making the opening statement is the second claim. I mean, there's two claims here for an exception. He never should have made the promise, number one. And number two, he didn't call. I suppose number three, he didn't explain to the jury why. But the question becomes, isn't he entitled to a hearing on all of that? I believe at some point he is. Okay. So then your position would have to be that whatever we do with this case would not be on this issue, would not be on the merits, would never become law of the case, but rather disposing it on a procedural issue to be argued on another day. I think that's a fair statement. I think that that is the only possible way to reach this issue. It's not something that, on a silent record, that this attorney can be branded ineffective simply because the record is silent. To reach the issue, this court would actually... And that's what Briones did. Briones clearly has wrongly decided. Briones reached the issue without sending... Or without indicating and recognizing that this could only be advanced through a post-conviction. Briones did the opposite. In fact, I believe it's the fifth... It's the fifth district of this court said that we declined to presume that this was ineffective assistance of counsel on the silent record. That flips Strickland straight on its head. In the absence of a record, or evidence in the record to indicate otherwise, you have to presume that it was a reasonable trial strategy. That's not speculating. I think that's what I asked you before. Give me the reasonable trial strategy of doing what... of accomplishing what was accomplished in this case. Getting up an opening statement and making that remark and then not doing it. Well... What possible... You know, I'm asking. Give me a reasonable strategy. That he believed that they were going to be called as witnesses? He had every intention of calling this as witnesses? I don't know that. I can't get into defense... trial defense counsel's head. But... that he believed that they were going to be presented during the defendant's case in chief? And that all developed in a day? Well, it's... They're two full days of testimony. Well... Not counting the day. Okay, the first day, he makes the statement. So, between him making an opening remark to the jury and the conclusion of the case, that's the span. And I guess... You know, I'm just... It doesn't make any... I'm sorry. Maybe I'm missing something. It just doesn't make any sense to me. Well, I think that... Why somebody would get up and say that. Better you say nothing. Better you say, reasonable doubt, ladies and gentlemen. Blah, blah, blah. Well... Courts of review are... clearly have consistently held that when a change... there's a change in circumstances can happen. And even Strickland itself declined to have a checklist for things that are per se ineffective. In fact, Strickland says you never do that. You never presume prejudice. There's no checklist because the variety of factors that can weigh into defense counsel's strategic decisions are voluminous. And especially on a silent record, they're voluminous and they're not... They're not in the record to be discussed on appeal as in this case. The fact is that if defense trial strategy did change during the pendency of the trial which is entirely possible, the attorney was... was competent, was effective, had the wherewithal not to call them. Because if he had, potentially they would have testified no, that's not true. What I told the defense investigator is not true. I told you this morning I'm not going to lie for my son. I mean, then clearly he'd have a record to show almost absolutely effectiveness if he had done that. And I guess it all comes back to the court of review cannot presume certain things based on a silent record. And to answer your... I guess to give you the short answer to your question I don't know and this court doesn't know and when this court doesn't know on that silent record it can't brand this attorney ineffective simply because it's not spread of record or because it wasn't a post-trial hearing. Could I ask the question about the police report because I'm really confused by that. The police report was admitted as evidence of impeachment. No, but I don't know what you mean by that. The actual document? I've never seen that yet. Well, it was it was used at trial during the defendant's case it was marked as an I beg your pardon? How was it used? It was marked as an exhibit and it was used by the defense attorney to impeach attempt to impeach Maria Vasquez and Gabrielle Vasquez so it was it was a statement it was classic prior inconsistency So did you talk to the police officer did you give this statement? And what did they say? And they absolutely denied it. Now did they he show them the document? No. This document was never shown to the civilian witnesses. So that didn't happen. So now you call the police officer police officer did you did these people say make an identification? And he says I can't remember. Right? I believe he says I don't recall. Okay what happened then? Well then the document was shown to him his recollection was refreshed by the document he reviewed it and as it clearly indicated it's attached as an exhibit this court can see it that they were listed witnesses I believe two and three which is Gabrielle and Maria It says possible suspect I'm just asking so they show it to him they say alright you can't remember what's in your report here's I'm marking this as exhibit so and so please read it does that refresh your recollection? Is that what happened? I believe that's what happened And then what do you say? And he said after reviewing the document yes they told me that Gregory Banks is quote a possible offender And so that's the end of the story? It was it was But then something else happened Right? That's traditional impeachment which you just described Classic Impeachment with a prior inconsistency How does the piece of paper get in front of the jury? It was not introduced in front of the jury and the record on that is absolutely clear Number one at the very beginning of the trial Judge Darcy said one thing you're not going to get so don't ask for them is police support So what happened to the document? The document was impounded along with all these other documents Was it introduced into evidence? I beg your pardon? Was it introduced into evidence on motion to defend? At the end for impeachment No just answer this question I'm moving to strike the dedication marks and moving this into evidence In so many words That was part of the defense case Do you have an objection? We have no objection The document itself comes into evidence So was there any discussion about documents going to the jury? Well there was not documents because no documents did go to the jury and I think that bolsters our point that it did not go back because the only thing that did go back that's clearly in the record  and the state's attorney said judge it's fine they're not live ammunition they can go back So that was the only discussion about what was going to go back to the jury was the physical evidence of the and not the document itself and that is bolstered by the fact that this trial judge at the beginning of the trial told the jury police reports are not evidence you're not going to get them They're inadmissible as a matter of law But they were admitted The document wasn't they don't understand Well I guess in the distinction that we're drawing is that and I think the Meeks case discusses that very clearly it's clearly admissible as impeachment But the information is the testimony from the witness regarding the contents of the of the of the of the case report not the case report itself Right But it did get Without objection to the benefit Yes That's correct And I guess So the parties did not articulate that this is going to evidence as impeachment I think was implied by the record The document wasn't the impeachment The impeachment was the testimony That's correct So I guess what Justice Tice is trying to hone in on Yes The document never should have been admitted into evidence itself That's correct If it was If it was physically introduced as evidence I mean there's frequently  at trial whether it's for impeachment or substantively And it doesn't necessarily go back to the jury And of course impeachment evidence would never go back to the jury because it's not substantive evidence It's just merely to impeach And that testimony That evidence came out through the officer himself Officer Hanrahan Okay I want to give the antitrust lawyer a follow-up Thank you  we would ask this court to affirm the defendant's conviction as evidence Very briefly Your Honor There's a lot of debate about whether this court has the authority to remand I know this court's inquired It is Rule 615b2 People v. Garrett Illinois Supreme Court in 1990 held that yes this court can retain jurisdiction and remand for a hearing Notably the Illinois Supreme Court has done this in their effectiveness claims even outside of the Franklin context The most recent example I can think of is People v. Houston There There was a There was a failure to record voir dire The Illinois Supreme Court remanded in order to have the record facts that the state argues is necessary to rebut in an effectiveness claim Yes this court can and should do it I'd also note that to simply push this to collateral review effectively would deny Mr. Castellano the ability to have an attorney for direct appeal on this case Effectively make a decision that there are certain categories of constitutional violations which a defendant cannot address on direct appeal That was the mistake that People v. Ligon one of the cases the state relies on made And for that reason the failure to appoint that defendant an attorney for collateral review is now before the Illinois Supreme Court The way around the problem faced by the Ligon case is simply to remand directly to the trial court so we can have a hearing while the witness's memories are fresh Finally Your Honors It's clear that we don't presume while we might you know we might presume that an informed strategic decision is sound We don't invent facts off the record then presume them to be true in order to rebut a claim of ineffectiveness What the record makes out is a clear claim of ineffectiveness on its face Counsel made the promise Counsel broke the promise Counsel did nothing to mitigate that promise What the state is trying to do is invent off the record facts that might show that that's the case We simply don't confront a silent record We confront a very clear record that outlines a claim of ineffectiveness And yes Your Honors that we that the Finally Your Honors as to whether the exhibits are on the record First I'd say that we have that ineffectiveness is established even without these exhibits and that's what the state has decided There Counsel actually did learn that a witness was going to perjure herself after he made the promise in opening statements However the Sixth Circuit in that case granted a new trial because Counsel should have learned that in the months before trial And this is where we get into the difference between the eight months that passed between the time the alibi was noticed and the few hours that passed between the first and second day of trial A reasonable attorney needs to be able to determine whether he has that witness before he makes the promise Here Counsel certainly had the time He should not have waited until the second day of trial until the first night of trial to be able to figure out what the witness says One fact is we know where the history of perjury lies in this case It's not with the witnesses signed affidavits saying that they are ready to testify It's with the state's own witnesses that are giving confused and contradictory testimony And given that and given that there are other errors on this record this court can reverse without even addressing the ineffectiveness of this argument Thank you, Your Honor Counsel, thank you May it be taken...